UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REZA FETANAT,

         *Plaintiff*,

  v.

MARCO RUBIO, *et al.*,

         *Defendants*.

Civil Action No. 24-02298 (AHA)

**Memorandum Opinion and Order**

Reza Fetanat sues under the Administrative Procedure Act ("APA") and the Mandamus Act to compel government officials to make a final decision on his nonimmigrant visa application. The defendants move to dismiss the complaint, arguing that this Court lacks subject-matter jurisdiction and that the complaint fails to state a claim of unreasonable delay. The Court disagrees with both bases for dismissal and accordingly denies the motion to dismiss.

**I.    Background[1]**

The B-1/B-2 visa program allows people with "residence in a foreign country which [they have] no intention of abandoning" to enter the U.S. "temporarily for business or temporarily for pleasure." 8 U.S.C. § 1101(a)(15)(B). To get a visa, people generally apply through their local consulate and interview with a consular officer. 22 C.F.R. §§ 41.101(a), 41.102, 41.103(a). After the interview, "the consular officer must issue the visa [or] refuse the visa." *Id.* § 41.121(a); *see Administrative Processing Information*, U.S. Dep't of State, https://perma.cc/44NKRVZE (last

---

[1] As required at this stage, the Court accepts the complaint's well-pled factual allegations and draws all reasonable inferences in Fetanat's favor. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

visited Sep. 14, 2025). If the consular officer believes additional information could help establish the applicant's eligibility, the officer can "refuse" the visa and refer the application for further administrative processing. *Administrative Processing Information*, *supra*.

According to the complaint, Fetanat is a permanent resident of Canada and national of Iran. ECF No. 1 ¶ 2. He is the cofounder of a startup that builds unmanned servicing stations in space. *Id.* ¶ 44. The startup is backed by an American technology startup accelerator and venture capital firm. *Id.* Fetanat applied for a B-1/B-2 nonimmigrant visa to meet with investors and stakeholders, and to "secure crucial funding." *Id.* ¶ 50. After an interview in April 2023, the consular officer told Fetanat a visa would not be issued at that time and referred his application for additional administrative processing. *Id.* ¶¶ 4, 53; *see* 8 U.S.C. § 1201(g) (stating that a consular officer may not issue a visa to an individual who "appears" ineligible, is known to be ineligible, or submits a noncompliant application). That processing continues.[2]

Fetanat brings this action under the APA and the Mandamus Act to compel the government to decide his visa application. *See* 5 U.S.C. § 706(1) (directing a court to "compel agency action unlawfully withheld or unreasonably delayed"); 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."). The defendants move to dismiss the case for lack of subject-matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[3]

---

[2]  Some courts refer to non-issuance notices under 8 U.S.C. § 1201(g) as section 221(g) notices, referring to the corresponding section of the Immigration and Nationality Act.

[3]  The named defendants are sued in their official capacity, so the individuals who currently hold these positions are "automatically substituted" for their predecessors. Fed. R. Civ. P. 25(d).

**II.     Discussion**

To survive dismissal under Rule 12(b)(1), a plaintiff must show that the Court has subject-matter jurisdiction to hear their claim. *See Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008). The Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged,' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citations omitted) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[A] well-pleaded complaint should be allowed to proceed 'even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely.'" *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (second alteration in original) (quoting *Twombly*, 550 U.S. at 556).

Here, the defendants argue that the complaint fails to identify a clear nondiscretionary duty that they failed to carry out and that granting relief would violate a doctrine that insulates consular visa decisions from judicial review. According to the defendants, the first issue deprives the Court of subject-matter jurisdiction to hear this case, while the second shows Fetanat failed to state a claim.

**A. Fetanat Has Plausibly Alleged Violation Of A Nondiscretionary Duty**

In cases challenging unreasonable agency delay, "the standards for obtaining relief" under the APA and the Mandamus Act are "essentially the same." *Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010). As a threshold matter, the plaintiff must show that the agency had a clear nondiscretionary legal duty that it violated by failing to take some discrete action. *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022); *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 227 (D.C. Cir. 2009).

Here, Fetanat claims the defendants have a duty to issue final decisions on visa applications within a reasonable length of time. The defendants do not seem to dispute they have this duty. *See* ECF No. 6 at 8 (collecting cases recognizing a responsibility to decide applications); ECF No. 8 at 8–9 (acknowledging the "action required" under applicable regulations is "to issue or refuse Plaintiff's visa application"). Fetanat says that duty is reflected in the APA, the Immigration and Nationality Act ("INA"), implementing regulations, and the State Department's Foreign Affairs Manual ("FAM"). *See* 5 U.S.C. § 555(b) (APA provision requiring an agency to "conclude a matter presented to it" in a "reasonable time"); 8 U.S.C. § 1202(e) (INA provision stating that a nonimmigrant visa application "shall be disposed of as may be by regulations prescribed"); 22 C.F.R. § 41.106 (requiring consular officers to process nonimmigrant visa applications "properly and promptly"); *id.* § 41.121(a) (stating that "when a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa [or] refuse the visa"); 9 FAM § 403.7-3 (FAM provision informing consular officers that once an application is complete, they "must either issue the visa or refuse it" and "may not temporarily refuse, suspend, or hold the visa for future action"). Consistent with the parties' understanding and these authorities, several courts in this district have concluded that there is a duty to adjudicate visa applications within a reasonable time. *Rashidian*

4

*v. Garland*, No. 23-cv-01187, 2024 WL 1076810, at *5 (D.D.C. Mar. 8, 2024); *see, e.g.*, *Kahbasi v. Blinken*, No. 23-cv-01667, 2024 WL 3202222, at *5 (D.D.C. June 27, 2024); *Ameer v. Schofer*, No. 23-cv-03066, 2024 WL 2831464, at *4 (D.D.C. June 4, 2024); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 100 (D.D.C. 2020). This Court agrees.

The parties dispute whether the complaint plausibly alleges a violation of that duty. Fetanat argues that it does, and the Court agrees. The complaint alleges that since Fetanat submitted his application and appeared for his interview, he has never received a final decision on his visa application and, to the contrary, has consistently been told the application is still being processed. ECF No. 1 ¶¶ 42–43, 52. More specifically, the complaint alleges that after Fetanat's interview, he was informed, in accordance with 8 U.S.C. § 1201(g), that his visa could not be issued at that time and that "the application would be placed in administrative processing." *Id.* ¶ 47. Fetanat attaches an email showing that after his interview, the embassy requested copies of his previous passports for further review. ECF No. 1-8 at 1. Since the interview, the online portal for his visa application has stated Fetanat "will receive another adjudication once [administrative] processing is complete." ECF No. 1 ¶ 53. And Fetanat attaches correspondence in which the embassy confirms that the purpose of administrative processing remains "to verify [his] qualifications for the visa." ECF No. 1-8 at 1. Accordingly, Fetanat has plausibly alleged that the defendants have not carried out their duty to decide his visa application.

The defendants argue that they did decide Fetanat's visa application. They say that because Fetanat alleges he received notice under 8 U.S.C. § 1201(g) that the consular officer could not issue the visa at the time of the interview and that the officer would send it for additional processing to determine Fetanat's qualifications for the visa, the officer "refused" the visa. This argument is unpersuasive, at least on the allegations before the Court. It is true a consular officer must give

5

notice whether a visa will issue at the end of an interview, which can include denying the application outright or determining "[n]o visa . . . shall be issued" at that time and referring the case for further processing. 8 U.S.C. § 1201(g); *see Administrative Processing Information*, *supra*. Here, Fetanat alleges the latter, and further alleges the embassy told him that this processing means his visa remains under active consideration and committed to contacting him with an outcome. ECF No. 1-8 at 1. Simply characterizing this circumstance a "refusal" does not change that, according to the allegations, the defendants have not yet decided whether Fetanat is entitled to the visa. *See Vulupala*, 438 F. Supp. 3d at 98–99 (observing that fixation on words like "refusal" when a consular officer refers an application for administrative processing "elevates form over substance" and, instead, "the focus should be on what is actually happening"); *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 16 (D.D.C. 2022) (explaining that although a consular official may nominally "refuse" an application by issuing a notice referring the case for further processing, "that magic word is not a get-out-of-review-free card" because the embassy may take further action "inconsistent with a final decision"); *Giza v. Blinken*, No. 23-cv-01641, 2024 WL 3967284, at *3 (D.D.C. Aug. 27, 2024) (holding that refusing a visa at the end of an interview and sending it to additional administrative processing instead is not a final decision "even if the Department of State's website labels the application as 'refused'").

The defendants argue *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024), compels the conclusion that any notice given under 8 U.S.C. § 1201(g) satisfies the duty to decide a visa application. *See* ECF No. 6 at 11. That's not so. To begin with, *Karimova* did not address the specific allegations here. There, the plaintiff herself acknowledged her visa application had been "officially" refused. *Karimova*, 2024 WL 3517852, at *4. And the panel's reasoning rested on the understanding that the plaintiff's application was placed in administrative processing

6

only "in case something changes [her] eligibility." *Id.* at *2. The panel accordingly described the legal question as whether a consular officer has a nondiscretionary duty "to re-adjudicate [an] already-refused application and, this time, to do it without subsequently retaining the application in case circumstances change in [the applicant's] favor." *Id.* at *3. Far from conceding an official decision on his visa, let alone one that would somehow have to be overcome, Fetanat plausibly alleges that no decision was made beyond more processing, the agency is actively verifying his eligibility, and the agency has committed to contacting him with an outcome.

To the extent the defendants' reading of *Karimova* is right and it would deem the notice of further processing here a final adjudication, this Court finds it "extremely difficult to square" with "the communications that visa applicants actually receive from various consulates." *Ibrahim v. Spera*, No. 23-cv-03563, 2024 WL 4103702, at *3 n.2 (D.D.C. Sep. 6, 2024) (following *Karimova* but emphasizing the gap between its analysis and the practical reality facing visa applicants); *see Datta v. Rubio*, No. 24-cv-02937, 2025 WL 752643, at *8 (D.D.C. Mar. 10, 2025) (taking the same approach while noting that consular communications like the ones Fetanat received "would lead any reasonable person to believe that consideration of their visa application is *not* concluded, and that the refusal of their application is *not* final"). This Court would accordingly join the "majority of the courts [in this district] that have confronted the question [and] have held that *Karimova* is not binding." *Aramnahad v. Rubio*, No. 24-cv-01817, 2025 WL 973483, at *6 (D.D.C. Mar. 31, 2025); *see, e.g.*, *Mahmoodi v. Altman-Winans*, No. 24-cv-02010, 2025 WL 763754, at *6 & n.3 (D.D.C. Mar. 11, 2025); *Baygan v. Blinken*, No. 23-cv-02840, 2024 WL 3723714, at *5 n.1 (D.D.C. Aug. 8, 2024); *Akter v. Rubio*, No. 24-cv-03256, 2025 WL 1950884, at *4–5 (D.D.C. July

16, 2025); *Hajizadeh v. Blinken*, No. 23-cv-01766, 2024 WL 3638336, at *3 n.3 (D.D.C. Aug. 2, 2024).[4]

### B. The Doctrine of Consular Nonreviewability Does Not Apply

The defendants next argue that the consular nonreviewability doctrine requires dismissal. That doctrine "shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021); *see also Dep't of State v. Muñoz*, 602 U.S. 899, 908 (2024) ("The [INA] does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions."). Fetanat responds that he is not challenging the substance of any decision to grant or deny his visa; he simply wants a final answer—favorable or not—on a reasonable timeline.

The defendants' argument is unpersuasive for at least two reasons. First, "a long line of decisions" in this district have interpreted the same consular nonreviewability cases the defendants rely on to mean that the "doctrine applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision." *Al-Gharawy*, 617 F. Supp. 3d at 11. As discussed, Fetanat has plausibly alleged the initial refusal he received was not a final decision. Second, although the defendants insist that *Karimova* stands conclusively for the proposition that consular nonreviewability insulates notices under 8 U.S.C. § 1201(g) from judicial review, *Karimova* declined to decide whether the principle

---

[4] The court twice declined to publish its decision. *See Karimova*, 2024 WL 3517852, at *1; Order, *Karimova*, No. 23-5178 (D.C. Cir. Sep. 10, 2024). Under D.C. Circuit rules, the "panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." D.C. Cir. R. 36(e)(2). This means the *Karimova* panel "unanimously agree[d] that it does not alter, modify, or significantly clarify a rule of law" and such decisions "are frequently announced in a way that makes them not suitable for governing future cases." *In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011) (quotation marks, alterations, and citations omitted).

of nonreviewability applies where, as here, a plaintiff "purports to challenge the timing rather than content of a consular visa decision." *Karimova*, 2024 WL 3517852, at *6.[5]

### III. Conclusion

For these reasons, the defendants' motion to dismiss, ECF No. 6, is denied.

                                                _____

                                                AMIR H. ALI
                                                United States District Judge

Date:   September 15, 2025

---

[5] The defendants did not "file a certified list of the contents of the administrative record" with their motion as required by Local Civil Rule 7(n). They claim the rule does not apply because "the basis for Plaintiff's challenge is not of final agency action, but rather agency inaction." ECF No. 6 at 13 n.3. The Court does not adopt that interpretation of the rule—agency action typically includes an agency's failure to act. *See Janay v. Blinken*, 743 F. Supp. 3d 96, 105 (D.D.C. 2024) (declining to "adopt that categorical view" for the same reason (citation omitted)). The Court dispenses with the requirement here because "the administrative record is unnecessary to decide the threshold legal questions presented by the pending motion to dismiss," and Fetanat has not provided any reason to conclude otherwise. *Id.*